# No. 14-1327

In the
United States Court of Appeals
for the Sixth Circuit

## United States of America,

Appellee

v.

## Latoya Perry,

Appellant.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 2:11-20677

## Brief for the United States

Barbara L. McQuade
United States Attorney

Michael C. Martin
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9100
Michael.C.Martin@usdoj.gov

# Table of Contents

Table of Authorities .................................................................. iii

Waiver of Oral Argument ........................................................ v

Issues Presented ...................................................................... 1

Statement of the Case ............................................................. 2

1.  Perry's Guilty Plea .......................................................... 3
2.  Perry's Post-Plea Interactions With the District Court ................. 8
3.  Perry's Psychological Examinations ................................. 11
4.  Perry's Sentencing ......................................................... 13
5.  Perry's Appeal ............................................................... 15

Summary of the Argument ................................................... 16

Argument ............................................................................. 17

I.   The Rule 11 Plea Agreement's appeal waiver provision
     should be enforced because the district court did not commit
     plain error in finding that Perry pleaded guilty knowingly
     and voluntarily ............................................................ 17

     A.   Standard of Review ............................................... 17

     B.   Perry's Plea Was Knowingly and Voluntarily Entered ........ 18

II.  The district court did not commit plain error when it did not,
     *sua sponte*, order a competency examination after Perry's
     guilty plea ................................................................... 22

     A.   Standard of Review ............................................... 22

     B.   The District Court Committed No Error by Failing to
          Order a Competency Hearing Because There Was No

Credible Information to Suggest That Such a Hearing
Was Needed. ...........................................................................22

III.    This Court should not hear Perry's claim of ineffective
assistance of counsel because the record is undeveloped and
such claims must typically be raised in a motion under 18
U.S.C. § 2255 ....................................................................30

IV.    Perry's claims regarding her sentence are waived ........................31

Conclusion...................................................................................32

Certificate of Compliance with Rule 32(a) .............................................33

Certificate of Service ......................................................................34

Relevant District Court Documents .......................................................35

# Table of Authorities

## Cases

*Drope v. Missouri,* 420 U.S. 162 (1975) .................................................. 22

*King v. Dutton*, 17 F.3d 151 (6th Cir. 1994) .......................................... 18

*Pate v. Robinson*, 383 U.S. 375 (1966) .................................................. 23

*United States v. Carpenter*, 25 F. App'x 337 (6th Cir. 2001) ................. 22

*United States v. Denkins*, 367 F.3d 537 (6th Cir. 2004) ................... 23, 25

*United States v. Dorsey*, 455 F. App'x 680 (6th Cir. 2012) ............... 20, 24

*United States v. Gignac*, 301 F. App'x at 471 (6th Cir. 2008) ................ 24

*United States v. Gooch*, 595 F. App'x 524 (6th Cir. 2014) ........... 22, 27, 28

*United States v. Jones*, 403 F.3d 817 (6th Cir. 2005) ....................... 19, 20

*United States v. Jones*, 519 F. App'x 384 (6th Cir. 2013) ...................... 20

*United States v. Lalonde*, 509 F.3d 750 (6th Cir. 2007) ......................... 20

*United States v. McCarthy*, 628 F.3d 284 (6th Cir. 2010) ...................... 30

*United States v. McGilvery*, 403 F.3d 361 (6th Cir. 2005) ..................... 31

*United States v. Miller,* 531 F.3d 340 (6th Cir. 2008) ........... 22, 23, 25, 28

*United States v. Mitchell*, 577 F. App'x 582 (6th Cir. 2014) .................. 20

*United States v. Newton*, 389 F.3d 631 (6th Cir. 2004) .................... 23, 24

*United States v. Page*, 520 F.3d 545 (6th Cir. 2008) .............................. 17

*United States v. Shearer*, 301 F. App'x 450 (6th Cir. 2008)....................21

*United States v. Toth*, 668 F.3d 374 (6th Cir. 2012) ...............................20

*United States v. Tucker*, 204 F. App'x 518 (6th Cir. 2006) ....................29

*United States v. Webb*, 403 F.3d 373 (6th Cir. 2005) ............................18

*United States v. Willis*, 362 F. App'x 531 (6th Cir. 2010)......................25

*United States v. Winans*, 748 F.3d 268 (6th Cir. 2014) .........................21

*United States v. Workman*, 536 F. App'x 590 (6th Cir. 2013)................20

*Williams v. Bordenkircher*, 696 F.2d 464 (6th Cir. 1983)......................23

## Statutes

18 U.S.C. § 3553....................................................................................15

18 U.S.C. § 4241(a) ..........................................................................23, 28

21 U.S.C. § 841(a) ....................................................................................3

28 U.S.C. § 2255.........................................................................1, 17, 30

## Rules

Fed. R. Crim. P. 11 ................................................................................18

# Waiver of Oral Argument

The government waives oral argument in this case.

# Issues Presented

I.    Did the district court commit plain error when it found, after conducting a thorough and comprehensive plea colloquy, that Perry entered the plea knowingly and voluntarily?

II.    Did the district court commit plain error when it did not, *sua sponte*, order a competency hearing for Perry when the district had multiple interactions with Perry after her plea in which there was no indication that competency was an issue, two forensic psychologists concluded Perry did not have any impaired cognitive functioning, and two successively appointed defense attorneys never raised any concerns about Perry's competency?

III.    Should Perry's ineffective assistance of counsel claim be heard when the record on this issue is undeveloped and circuit precedent requires such claims to be raised in the first instance with the district court in proceedings under 28 U.S.C. § 2255?

IV.    Should Perry's arguments regarding her sentencing guideline calculations be heard when Perry waived her right to appeal this issue in her plea agreement?

# Statement of the Case

Perry pleaded guilty to one count of distributing crack cocaine. (R. 75: Plea Hearing Trans., PgID 391). Perry's guilty plea was entered pursuant to a plea agreement, which contained an appeal waiver provision. (R. 27: Plea Agreement, PgID 49). Despite being sentenced in accordance with the plea agreement, Perry disregarded the appeal waiver provision and filed a notice of appeal.

The government filed a motion with this Court to dismiss Perry's appeal on the basis of the appeal waiver provision in the plea agreement. Perry filed a response in which she claimed—for the first time—that she has low intelligence and that, as a result, her plea and by extension her waiver of her right to appeal, were not knowing and voluntary. The government's motion to dismiss is pending.

1.     Perry's guilty plea

On March 8, 2012, Perry signed a written plea agreement in which she agreed to plead guilty to count two of a superseding information that charged distribution of 31.75 grams of crack cocaine, in violation of 21 U.S.C. § 841(a).  (R. 27: Plea Agreement, PgID 55). The parties agreed that Perry was a career offender and that her guideline range was 188-235 months' imprisonment.  (*Id.,* PgID 50).  The plea agreement also contained an appeal waiver provision.  Specifically, paragraph 7 of the plea agreement, entitled "Right to Appeal," provides: "Defendant waives any right she may have to appeal her conviction.  If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement [235 months], defendant also waives any right she may have to appeal her sentence."  (*Id.,* PgID 53).

On March 12, 2012, Perry completed and signed a "guilty plea questionnaire" in preparation for the plea hearing.  (R. 26: Guilty Plea Questionnaire, PgID 48). In the questionnaire, Perry stated that she was 37 years' old, had a GED certificate, and could read, write and understand the English language.  (*Id.,* PgID 42).  Perry stated that she had not been induced or persuaded to plead guilty by any threat, undue influence, duress or promise.  (*Id.,* PgID 47).  Perry answered "Yes" to

the question: "Do you fully understand every provision within the proposed Plea agreement?" (*Id.,* PgID 44). Perry answered "Yes" to the question: "Are you aware that the proposed Rule 11 Plea Agreement contains a provision which indicates that you have waived (or given up) your right of appeal, as well as your right to collaterally attack the sentence?" (*Id.,* PgID 45). Perry acknowledged that she understood that the plea agreement "will become binding upon you . . . if it is accepted by the Court." (*Id.*). Perry answered "Yes" to the question: "Have you thoroughly understood all of the questions that have been asked of you in this 'Guilty Plea Questionnaire' form?" (*Id.,* PgID 48).

On March 12, 2012, the district court held a plea hearing in which it received into evidence both the plea agreement and the guilty plea questionnaire. (R. 75: Plea Hearing Trans., PgID 393-94). After being placed under oath, Perry stated that she was 37 years' old, she could read and write the English language, that she attended school to the 11th grade, that she had a GED degree, and that she was not under the influence of any substances. (*Id.,* PgID 395-96). Perry stated that she was not pleading guilty because of any threats, undue influence, duress or promises. (*Id.*, PgID 410). The district court also confirmed that

Perry understood the nature of the charge and the maximum penalties. (*Id.,* PgID 404-09).

The district court asked Perry if she understood "every provision" of the plea agreement. (*Id.,* PgID 400). Perry answered "Yes." (*Id.,* PgID 401). The district court asked Perry if she was aware that the plea agreement contained "a provision which indicates that you have waived or given up your right to appeal." (*Id.,* PgID 401). Perry answered "Yes." (*Id.*). The district court asked counsel for the government to identify and read the plea agreement's appeal waiver provision to Perry. (*Id.,* PgID 402). After the appeal waiver provision was read out loud by government counsel, Jonathan Goulding, the district court addressed Perry directly:

> THE COURT:    Did you hear Mr. Goulding's reading of paragraph seven on page five of Government Exhibit Number One [the appeal waiver provision of the Rule 11 plea agreement]?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:    Does that—did you understand what he said, what he read?
>
> THE DEFENDANT:   Yes, I understand.
>
> THE COURT:    Do you want Mr. Goulding to read that paragraph again?

THE DEFENDANT:   No, sir.

THE COURT:   Does that change your mind about offering a plea of guilt?

THE DEFENDANT:   No.

(*Id.,* PgID 403).

The district court thoroughly advised Perry of all of her Constitutional rights, and confirmed that Perry wished to waive them. (*Id.,* PgID 396-402). Perry coherently summarized, in her own words, the conduct that made her guilty of the offense and answered a series of questions from the district court regarding specific details about her conduct.  (*Id.,* PgID 405-06).

The district court asked Perry if she knew "anything that would prevent you from fully understanding the nature of the charge that is presently pending against you." (*Id.,* PgID 411). Perry answered "No, sir." (*Id.*). The district court asked Perry if she knew "anything that would prevent you from completely understanding the questions that I asked of you today." (*Id.*). Perry answered "No, sir." (*Id.*). The district court asked Perry if she "thoroughly understood all the questions that I asked of you today." (*Id.,* PgID 412). Perry answered "Yes, sir." (*Id.*).

6

Government counsel summarized the appeal waiver provision for a second time, and the district court again asked Perry if the government's statements "caused you to change your mind about offering a plea of guilty." (*Id.,* PgID 413). The defendant answered, "No, sir." (*Id.*).

At the completion of the district court's thorough questioning, the district court found that Perry's "offer of guilt was voluntarily and intelligently made to me by her. Moreover, I have not found any evidence of any mitigating factors that in my opinion would have adversely affected her ability to fully understand the nature as well as the consequences of her admission of guilt." (*Id.,* PgID 414). The district court again advised the defendant that she entered into a Rule 11 agreement that contained an appeal waiver provision and that "such waivers are generally enforceable." (*Id.,* PgID 415).

At no time during the plea hearing did defense counsel raise any concerns about Perry's competency.

## 2.      Perry's post-plea interactions with the district court

Following Perry's guilty plea, the district court interacted with Perry on three occasions—none of which produced any sign that Perry was incompetent. The first of these interactions was when Perry appeared for her first sentencing on August 27, 2012, approximately five months after she pleaded guilty. The sentencing, however, did not take place because Perry's attorney moved to withdraw his representation. (R. 71: Trans. Of Attorney's Motion to Withdraw, PgID 205).  Defense counsel explained that his relationship with Perry had "broken down" because Perry wished to dispute facts contained in the government's sentencing memorandum, which, in turn, were based on facts contained in the pre-sentence report. (*Id.*). However, Perry had previously indicated to defense counsel that she had no objections to these facts following their review of the PSR together. (*Id.*). According to defense counsel, Perry then accused him of not giving her enough time to review the PSR, at which point defense counsel lost his temper with Perry. (*Id.*). Defense counsel explained that there were "numerous occasions" when he had met with Perry and she expressed her belief that defense counsel was  "not representing her best interest, that I was

not spending adequate time on her case, that I was—in her words I was
not prepared to fight for her . . . ." (*Id.,* PgID 206).

Perry then addressed the district court in a lengthy statement,
which spans nearly five uninterrupted pages of transcription. (*Id.,* PgID
209-14). Perry discussed several topics, including her relationship with
God, the tribulations of various family members, her disagreement with
various facts contained in the PSR, her attempt to cooperate with the
government, and the conduct that made her guilty of the offense. (*Id.*).
She also explained that she had several grievances with the jail where
she was being held but that her attorney "didn't show no interest" in
those grievances and "[t]his is why we had problems."  (*Id.,* PgID 210-
11).

The district court permitted defense counsel—whom the district
judge described as having "a very good reputation in Detroit for being
an outstanding lawyer"—to withdraw because "the element of
confidence between Miss Perry and her current counsel . . . is lacking."
(*Id.,* PgID 216). At no time during this hearing did defense counsel raise
any concerns about Perry's competency.

The district court's next interaction with Perry was at a hearing
on March 28, 2013, approximately one year after her guilty plea. By this

point, Perry had been appointed new counsel, who had filed a motion to
withdraw Perry's guilty plea along with an affidavit in support signed
by Perry. (R.43: Motion to Withdraw Guilty Plea, PgID 101; R. 43-2:
Declaration of Latoya Lavanda Perry, PgID 114). The basis for the
motion was not that Perry was mentally impaired, but rather that she
disagreed with her sentencing guideline calculations contained in the
plea agreement. (*Id.*). At the hearing on this motion, defense counsel
informed the district court that Perry wished to withdraw her motion to
withdraw her plea. (R.72: Motion Hearing Trans., PgID 221). The
district court questioned Perry at length and asked Perry to explain
why she was withdrawing her motion. (*Id.,* PgID 223). Perry stated that
she preferred the plea agreement because it permitted her to ask for a
sentence as low as seven years, as opposed to facing a possible ten year
mandatory minimum without the plea agreement. (*Id.*). According to
Perry, "[t]he seven years sound better to me to try to fight for." (*Id.*).
Defense counsel stated that Perry had decided to withdraw her motion
after defense counsel had "many, many jail visits and conversations"
with Perry. (*Id.,* PgID 225). After the district court allowed Perry to
withdraw her motion, Perry made another lengthy statement that
spans roughly six pages of transcription in which she reviewed the

10

various grievances she had with the jail. (*Id.,* PgID 228-33). At no time during this hearing did defense counsel raise any concerns about Perry's competency.

### 3.    Perry's psychological examinations

In an effort to prepare mitigation evidence for sentencing, Perry retained a psychologist who examined Perry and prepared a report in which he concluded that Perry's intellectual functioning was "in the average range." (R. 78: Def. Forensic Rep. 2). Perry's psychologist also concluded that Perry had post-traumatic stress disorder and bi-polar disorder which was the cause of her lengthy and chronic criminal history. (R. 74: Sent. Tr. 18-82). The government was skeptical of the diagnosis of post-traumatic stress disorder and bi-polar disorder, and requested that the district court order Perry to undergo a psychological examination by the Bureau of Prisons (BOP). (R. 54: Govt's Motion for Psych. Exam., PgID 153). On July 15, 2013, approximately 15 months after the defendant pleaded guilty, the district court ordered Perry to undergo an examination by a BOP psychologist. (R. 55: Order for Psych. Exam., 159-161).

Perry was examined by a BOP psychologist at a federal correctional facility in Los Angeles over a 45-day period. (R. 61: Gov't Supp. Sent. Memo, 173; R. 77: BOP Forensic Rep.). The BOP psychologist reviewed numerous records related to Perry, conducted two psychological tests of Perry, interviewed Perry, observed Perry interacting with other inmates and staff, interviewed staff members who interacted with Perry, and listened to 32 jail calls Perry made. (R. 77: BOP Forensic Rep. at 1-12). The BOP psychologist also administered an intelligence test in which Perry scored a 69, which is in the "extremely low range." (*Id.,* PgID at 13). However, the BOP psychologist found that:

> While Ms. Perry's scores are similar to individuals with Mild Mental Retardation, this is not consistent with her observed level of cognitive functioning. She appears to adapt well to new information and environments. Similarly, Ms. Perry was able to function appropriately and follow all rules and regulations with the MDC-LA structure and culture without any reported or observed difficulties. *The results from the cognitive testing are most likely an underrepresentation of Ms. Perry's overall cognitive functioning ability.*

*(Id.* at 14 (emphasis added)).

The BOP psychologist concluded that Perry was "not experiencing any major mood disturbances, such as a major depressive disorder, mania, *cognitive disturbances or impairment in concentration or*

*memory*." (*Id.* at 16). (emphasis added). There was "no evidence" of any mental illness. (*Id.*). And "*there was no indication that Ms. Perry was suffering from any form of involuntary interference with mental functioning or any level of mental retardation.* Rather, she demonstrated an intact ability to maintain hygiene routines and daily functioning, develop social relationships, and adhere to the regulations of a correctional environment." (*Id.* at 12). (emphasis added).

While no mental illness was diagnosed, the BOP psychologist did find that Perry had an anti-social personality disorder. (*Id.* at 16). Individuals with anti-social personality disorder "are frequently deceitful and manipulative in order to gain personal profit or pleasure." (*Id.* at 18). These personality traits are "enduring, inflexible, [and] maladaptive," and are "unlikely to substantially change, regardless of treatment." (*Id.* at 21).

### 4.    Perry's sentencing

Perry was sentenced on March 7, 2014, almost exactly two years after she pleaded guilty. The district court considered the parties' sentencing memorandums, the report from the defendant's psychologist, the report from the BOP psychologist, and the presentence report. (R.

13

74: Sent. Hearing Trans., PgID 247-52). According to the PSR, Perry

had amassed a total of 15 criminal convictions. At least 10 of those

convictions were by plea and Perry's most recent conviction by plea was

just 14 months prior to her plea in the present case. (PSR at ¶¶ 29-44).

Nothing in the presentence report indicated that Perry had ever been

found incompetent in any of these prior proceedings.

Perry's psychologist testified at the sentencing hearing about his

opinion that Perry had post-traumatic stress disorder and bi-polar

disorder. (R. 74: Sent. Tr., PgID 260-329).  The district judge, however,

expressly rejected these opinions.[1] (*Id.,* PgID 133-34).  After Perry's

psychologist testified, Perry made a lengthy statement directly to the

district court that spans 10 pages of transcription. (*Id.,* PgID 332-342).

Perry thanked the district court, discussed how she had become closer

to God, and expressed her desire to return to her family and change her

life. (*Id.,* PgID 333-34). When the district judge asked about her

relationship with God, Perry gave a coherent and detailed answer. (*Id.,*

PgID 336-35). When the district judge asked Perry how she would be a

---

[1] Perry's psychologist did not testify about his conclusion in his forensic report that Perry's intellectual functioning was "in the average range." (R. 78: Def. Forensic Rep. 2). Therefore, the district court's rejection of Perry's psychologist's testimony should not be read as a rejection of his conclusion about Perry's intelligence.

14

role model for her children, Perry again gave a coherent and detailed answer. (*Id.* PgID 338-42).

After thoroughly reviewing the factors in 18 U.S.C. § 3553, the district court sentenced Perry to 188 months' imprisonment. (*Id.* PgID 381). This sentence was at the low end of the guideline range contained in Perry's plea agreement and therefore triggered the appeal waiver provision.

At no time during this hearing did defense counsel, whom the district court described as an "excellent lawyer," raise any concerns about Perry's competency. (*Id.* PgID 386).

### 5.    Perry's appeal

Despite the appeal waiver provision in her plea agreement, Perry filed a notice of appeal on March 14, 2014. The government promptly filed a motion to dismiss her appeal on the ground that Perry waived her right to appeal. Perry filed an opposition to the government's motion arguing—for the first time at any point in this case—that she had a low intelligence and therefore was not able to knowingly and voluntarily plead guilty. This Court did not rule on the government's motion, but set a briefing schedule for this appeal.

## Summary of the Argument

The district court did not commit plain error when it found that Perry's guilty plea pursuant to a plea agreement was entered knowingly and voluntarily. The district judge conducted a comprehensive plea colloquy in which Perry repeatedly acknowledged that she understood what was happening and understood the rights that she was giving up by pleading guilty. As a result, Perry's plea is valid and this appeal should be dismissed based on the appeal waiver provision in her plea agreement.

The district court did not commit plain error when it failed to *sua sponte* order a competency hearing for Perry because there was no reasonable cause to believe that Perry was incompetent. Perry was able to interact with the district court on numerous occasions during this case and never displayed any conduct indicative of impaired mental functioning. In addition, two psychologists found that Perry did not have impaired mental functioning, and Perry's two defense attorneys never raised any concerns about her competency.

Perry's ineffective assistance of counsel claim should not be heard because the record is undeveloped on this topic and circuit precedent

16

requires that such claims be first brought in proceedings under 28 U.S.C. § 2255.

Perry's arguments regarding her sentencing guidelines should not be heard because she waived the right to appeal her sentence in her plea agreement.

## Argument

## I.    The Rule 11 plea agreement's appeal waiver provision should be enforced because the district court did not commit plain error in finding that Perry pleaded guilty knowingly and voluntarily.

### A.    Standard of review.

As is the case here, when a defendant fails to challenge her plea before the district court, this Court's review is limited to plain error. *United States v. Page*, 520 F.3d 545, 546 (6th Cir. 2008). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.*

## B.    Perry's plea was knowingly and voluntarily entered.

"To be valid, a guilty plea must be made voluntarily and intelligently." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). Federal Rule of Criminal Procedure 11 "is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent. Therefore, Rule 11 requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005).

The district court complied with the requirements of Rule 11 by having Perry complete the guilty plea questionnaire and questioning Perry in a detailed and thorough manner regarding her constitutional rights, the nature of the charge, the minimum and maximum penalties, and the terms of the plea agreement, including multiple explanations of the appeal waiver provision. (R. 75: Plea Hearing Trans., PgID 393-413). In response to the district court's questions, Perry repeatedly gave affirmative answers indicating that she understood her rights and wished to waive them; that she understood and agreed to the Rule 11

plea agreement; that she understood and agreed to the appeal waiver provision, and that she understood the district court's questions. *Id.* Perry also accurately and coherently described, in her own words, the conduct that made her guilty of the offense, and was able to answer several follow-up questions posed by the district court regarding that conduct. (*Id.* PgID 405-06). All of this was followed by the district judge's conclusion that Perry's "offer of guilt was voluntarily and intelligently made to me by her," and that "I have not found any evidence of any mitigating factors that in my opinion would have adversely affected her ability to fully understand the nature as well as the consequence of her admission of guilt." (*Id.* PgID 414).

This procedure is all the law requires in order for a district court to ensure that a defendant—even one who later claims to have low intelligence—has knowingly and voluntarily pleaded guilty. In *United States v. Jones*, 403 F.3d 817, 823 (6th Cir. 2005), a defendant challenged a guilty plea on the ground that he had "an extremely low IQ," and therefore did not understand "what he was waiving" when the trial court questioned him during the plea hearing. This Court rejected that argument because the defendant had stated to the trial court that he understood his rights. *Id.* at 824. This Court concluded that "a

19

straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to the plea agreement's consequences." *Id.* at 823-34.

Similarly, in *United States v. Dorsey*, 455 F. App'x 680, 683 (6th Cir. 2012) (unpublished), this Court enforced an appeal waiver provision despite the defendant's post-plea claim that "his 'low cognitive level' contributed to his inability to understand the plea." This Court's ruling was supported by the fact that the district court conducted the plea colloquy "carefully and thoroughly," asked whether the defendant "fully understood and had any questions," and at "each stage, Dorsey indicated that he agreed, and had no questions." *Id.*

Numerous decisions of this Court are in accord with *Jones* and *Dorsey,* and Perry cites no case where the Sixth Circuit has overturned a guilty plea or failed to enforce an appeal waiver provision when a district judge conducted the type of careful and comprehensive plea colloquy that was used in this case. *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012); *United States v. Lalonde*, 509 F.3d 750, 761-62 (6th Cir. 2007); *United States v. Mitchell*, 577 F. App'x 582, 586 (6th Cir. 2014) (unpublished); *United States v. Workman*, 536 F. App'x 590, 593 (6th Cir. 2013) (unpublished); *United States v. Jones*, 519 F. App'x 384-

85 (6th Cir. 2013) (unpublished); *United States v. Shearer*, 301 F. App'x 450, 452 (6th Cir. 2008) (unpublished).

In short, the district court did not commit plain error in accepting Perry's plea given the district judge's comprehensive questioning, Perry's coherent answers, and the district judge's affirmative finding that there was not "any evidence of any mitigating factors that in my opinion would have adversely affected her ability to fully understand the nature as well as the consequence of her admission of guilt." (R.75: Plea Hearing Trans., PgID 414).

In fact, Perry's appeal cites no error or deficiencies committed by the district court during the plea hearing. Nor does Perry identify any statement or behavior on her part during the plea hearing that would have caused the district court to question her ability to voluntarily or knowingly plead guilty. Nor did her defense attorney raise any concerns about Perry's cognitive abilities at the time of her plea. This Court should go no further. The district court's finding that the plea was knowing and voluntary should be upheld; the plea agreement's appeal waiver provision should be enforced; and the government's motion to dismiss this appeal should be granted. *United States v. Winans*, 748 F.3d 268, 270 (6th Cir. 2014) (dismissing appeal based on appeal waiver

provision in Rule 11 plea agreement identical to appeal waiver provision in Perry's Rule 11 plea agreement).

## II.    The district court did not commit plain error when it did not, *sua sponte*, order a competency examination after Perry's guilty plea.

### A.    Standard of Review.

In light of the fact that Perry did not request a competency hearing below, this Court reviews for plain error the district court's failure to order one *sua sponte*. *United States v. Gooch*, 595 F. App'x 524, 527 (6th Cir. 2014) (unpublished); *United States v. Carpenter*, 25 F. App'x 337, 344 (6th Cir. 2001) (unpublished).

### B.    The district court committed no error by failing to order a competency hearing because there was no credible information to suggest that such a hearing was needed.

"[T]he bar for incompetency is high: a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Miller,* 531 F.3d 340, 350 (6th Cir. 2008) (quoting *Drope v. Missouri,* 420 U.S. 162, 172 (1975)).  A district court is required to hold a competency hearing only when "the evidence raises a *bona fide* doubt" as to a

22

defendant's competence. *United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) (*quoting Pate v. Robinson*, 383 U.S. 375, 378 (1966)); *see also* 18 U.S.C. § 4241(a) (competency hearing only required when "there is reasonable cause to believe" that the defendant has a mental disease or defect). There are "no fixed or immutable signs" that a competency hearing is necessary. *United States v. Newton*, 389 F.3d 631, 637 (6th Cir. 2004). Among the factors to be considered are the defendant's demeanor, any prior medical opinion regarding competency, and evidence of irrational behavior. *Miller,* 531 F.3d at 348. Upon appellate review, this Court asks whether "a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983).

Perry's score of 69 on an intelligence test would not have caused a similarly situated district judge to experience doubt with respect to Perry's competency. For starters, the intelligence test was administered over 15 months after Perry pleaded guilty.[2] During the time between

---

[2] The gap in time between the plea and the intelligence test is itself a reason to discount the test's significance. The question of competency is

Perry's guilty plea and the intelligence test, the district court held two

hearings in which the district judge was able to interact with Perry and

observe her demeanor. *United States v. Newton*, 389 F.3d 631, 638 (6th

Cir. 2004) (no competency hearing necessary where "trial court had

multiple factors within its sensory perceptions to rely upon in

evaluating" defendant's competency). In both hearings, the record is

clear that Perry was able to answer the district court's questions, make

coherent statements, and indicated that she understood what was

happening. *United States v. Gignac*, 301 F. App'x at 471, 475-76 (6th

Cir. 2008) (no competency hearing necessary where defendant

"interacted with the court and articulately answered questions"). There

was also no concern raised by defense counsel about Perry's cognitive

ability—a fact that is particularly significant given that Perry was

represented by different attorneys, both of whom the district identified

---

focused on the defendant's condition "*at the time of h[er] plea.*" *United States v. Gignac*, 301 F. App'x 471, 476 (6th Cir. 2008) (unpublished) (emphasis in original). Perry's ability to participate in the plea hearing "is far more probative of competency" than a test taken long after the plea. *Id.* This Court has noted the difficulty that such post-plea claims of incompetency present. *Dorsey*, 455 F. App'x at 683 (plea voluntary despite statements in Presentence Report that defendant had "low cognitive level" because report "was prepared after the change of plea colloquy, and there was no way for [district judge] to consider these statements prior to accepting the plea").

as highly qualified individuals. *Miller,* 531 F.3d at 350 (no error in district court's failure to order competency hearing because, in part, "neither of Miller's trial attorneys raised any question at or before trial regarding Miller's mental health") *United States v. Willis*, 362 F. App'x 531, 536 (6th Cir. 2010) (no error in district court's failure to order competency hearing because, in part, "[d]efense counsel did not raise any concerns regarding Willis's competency").

In addition, Perry's own psychologist found that her intellectual functioning was "in the average range." (R. 78: Def. Forensic Rep. at 2). Likewise, the BOP psychologist found "no indication that Ms. Perry was suffering from any form of involuntary interference with mental functioning or any level of mental retardation." (R. 77: BOP Forensic Report, at 12). Perry's score on the intelligence test was, according to the BOP psychologist, an "underrepresentation of Ms. Perry's overall cognitive functioning ability." (*Id.* at 14). Viewed in light of the uncontradicted opinions of two psychologists, Perry's score on the intelligence test would not have caused a similarly situated judge to have doubts about her competency. *United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) (no error in district court failure to order competency exam after defendant pleaded guilty because, in part,

defendant's competency "was subsequently confirmed by qualified mental health professionals" and "record contains no professional opinion to the contrary").

The district court also had an opportunity to interact with the defendant at the sentencing hearing, which was held after the intelligence test was administered. Again, Perry proved to be coherent and able to understand and respond to the district judge, as was the case in all earlier hearings.  And again, Perry's defense attorney did not raise any concerns about Perry's intelligence or competency.

Aside from the intelligence test, Perry points to only a few other events that she claims should have alerted the district court to the need for a competency examination. None of these would have created a reasonable concern for Perry's competency. For example, the fact that Perry stated at one hearing that she did not understand the word "merit" does not mean that she was legally incompetent. As the hearing transcript makes clear, the district judge simply rephrased his question and Perry was able to understand and answer. (R. 71: Trans. Of Attorney's Motion to Withdraw, PgID 207-08).

Perry's belief that the district judge could help her with the problems she was allegedly having with the jail does not, as Perry

claims, demonstrate her "utter inability to understand the criminal justice system." Def. Brief at 30. It is not at all irrational for a criminal defendant to believe that a judge can rectify alleged abuses taking place in a jail. And even if such a belief were mistaken, it does not necessarily follow that Perry is legally incompetent. *United States v. Gooch*, 595 F. App'x 524, 527 (6th Cir. 2014) ("merely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him").

The same can be said with respect to the breakdown in Perry's relationship with her first attorney. Perry characterizes this breakdown as a problem with her ability to communicate. Def. Brief at 22. Communication, however, was not the problem. As the district court stated, the breakdown in the relationship was because "the element of confidence between Miss Perry and her current counsel . . . is lacking." (*Id.* PgID 216). Perry herself described for the district court that this lack of confidence was based on Perry's belief that her attorney "didn't show no interest" in Perry's grievances with the jail, a topic that she felt was significant. (*Id.* PgID 210-11).

This Court has made clear that "a defendant is not rendered incompetent to stand trial merely because he cannot get along with his

counsel or disapproves of his attorney's performance." *Miller*, 531 F.3d at 349. What matters for purposes of competency is whether a defendant has the *ability* to communicate with her attorney—not whether the defendant is communicating effectively with her attorney or even whether the defendant is communicating with her attorney at all. *Gooch*, 595 F. App'x at 528 ("An inability to communicate with counsel might be cause for concern. The decision not to speak to one's lawyer is a defendant's prerogative, not a sign of mental incompetence."); 18 U.S.C. § 4241(a) (competency hearing only required when defendant "is unable" to assist in her defense). The fact that Perry was *able* to communicate with defense counsel is confirmed in numerous ways throughout the record:

- Perry was able to communicate with the district judge at four separate hearings that were spread over a two-year period.

- Perry was able to communicate with her first attorney. According to Perry's first attorney, there were "numerous occasions" when he met with Perry and she expressed her belief that counsel was "not representing her best interest, that I was not spending adequate time on her case, that I was—in her words I was not prepared to fight for her . . . ." (R. 71: Trans. Of Attorney's Motion to Withdraw, PgID 206).

28

- Perry was able to communicate with her second attorney. For example, Perry's second attorney explained that Perry had decided to withdraw her motion to withdraw her guilty plea after defense counsel had "many, many jail visits and conversations" with Perry. (R.72: Motion Hearing Trans., PgID 225).

- Perry was able to communicate with the two psychologists who conducted separate examinations, both of which involved the psychologists interviewing Perry. (R.77: BOP Forensic Rep. at 1; R. 78: Def. Forensic Rep. at 1).

- While undergoing examination at the BOP facility in Los Angeles, Perry made 32 telephone calls that were reviewed by the BOP psychologist. The BOP psychologist reported that during these calls, "Ms. Perry's verbal behavior was clear, coherent, goal-directed, and without delay. She clearly had adequate recall of events and procedures, and fluid speech and articulation. Her voice, tone and volume, and content of her speech did not reflect psychosis. Throughout the conversations reviewed, her statements remained clear and logical." (R. 77: BOP Forensic Rep. at 11-12).

In short, a reasonable district judge would not have questioned Perry's competency in light of the district court's repeated interactions with Perry, the opinions of the two psychologists regarding Perry's intellectual functioning, and the fact that Perry's two defense attorneys never expressed a concern regarding her competency. *United States v. Tucker*, 204 F. App'x 518, 521 (6th Cir. 2006) (unpublished) (no error in district court's failure to order competency hearing despite fact that

defendant had "marginal intelligence" because of district judge's "own observations" of defendant and defense counsel's "expressions of confidence" in defendant's competency).

### III.    This Court should not hear Perry's claim of ineffective assistance of counsel because the record is undeveloped and such claims must typically be raised in a motion under 18 U.S.C. § 2255.

This Court "ordinarily [] will not review a claim of ineffective assistance of counsel on direct appeal because the record is usually insufficient to permit adequate review of such a claim. These claims are thus more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255." *United States v. McCarthy*, 628 F.3d 284, 295 (6th Cir. 2010). The record in this case is undeveloped regarding what the defendant's two attorneys knew about Perry's mental capacity and "what [their] strategy entailed regarding [her] mental history or guilty plea." *Id.* at 296. This case is "precisely the type of situation" where ineffective assistance claims are unripe for appellate review and should be heard in the first instance by the district court in § 2255 proceedings. *Id.*

## IV.    Perry's claims regarding her sentence are waived.

Perry's sentence of 188 months' imprisonment was within the guideline range contemplated in the plea agreement. The appeal waiver provision in the plea agreement therefore precludes Perry from appealing her conviction or sentence. This Court should enforce the appeal waiver provision and decline to review Perry's sentencing arguments. *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (dismissing defendant's appeal of his sentence because of valid appeal waiver provision in plea agreement).

Even if this Court were to not enforce the appeal waiver provision on the ground that Perry's plea was involuntary, it should still decline to hear Perry's sentencing arguments because an involuntary plea would negate her sentence and require a remand to the district court to readdress her guilt and sentence.

31

# Conclusion

For the foregoing reasons, this Court should dismiss this appeal.

Respectfully submitted,

Barbara L. McQuade
United States Attorney

/s/ Michael C. Martin
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9100
Michael.c.martin @usdoj.gov

Date:  May 8, 2015

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of
Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it
contains 6,186 words, excluding the parts of the brief exempted by
Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements
of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6)
because it has been prepared in a proportionally spaced typeface using
Microsoft Word in 14-pt. Century Schoolbook.


/s/ Michael C. Martin
Assistant United States Attorney


Dated: May 8, 2015

33

## Certificate of Service

I certify that on May 8, 2015, I electronically filed this brief for the United States with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of such filing to the following attorney for the defendant:

Nadia Wood
Law@NadiaWood.com


/s/ Michael C. Martin
Assistant United States Attorney

34

# Relevant District Court Documents

Appellee, the United States of America, designates as relevant the following documents available electronically in the district court's record, case number  2:11-cr-20677 in the Eastern District of Michigan:

| Record Entry No. | Document Description | PgID |
|---|---|---|
| R. 26 | Guilty Plea Questionnaire | 42–48 |
| R. 27 | Rule 11 Plea Agreement | 49–64 |
| R. 43 | Motion to Withdraw Guilty Plea | 101–115 |
| R. 54 | Motion for Psychological Examination and Report | 153–158 |
| R. 55 | Order Granting Psychological Examination and Report | 159–162 |
| R. 61 | Sentencing Memorandum | 171–182 |
| R. 71 | Transcript of Motion Hearing (8/27/12) | 203–218 |
| R. 72 | Transcript of Motion Hearing (3/28/13) | 219–235 |
| R. 74 | Transcript of Sentencing (3/7/14) | 244–390 |
| R. 75 | Transcript of Plea Hearing (3/12/12) | 391–418 |
| R. 77 | Bureau of Prisons Forensic Report | (*filed under seal*) |
| R. 78 | Defendant's Forensic Report | (*filed under seal*) |
| n/a | Presentence Investigative Report | n/a |